UNITED STATES of America, Appellee,

v.

Madell COLLINS, Defendant-Appellant.

No. 566, Docket 29772.

United States Court of Appeals Second Circuit.

Argued July 26, 1965.

Decided Aug. 6, 1965.

---

Meyer Licht, New York City, for appellant.

Edward M. Shaw, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, and Michael W. Mitchell, Asst. U. S. Atty., New York City), for appellee.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge:

The defendant was convicted after a six-day jury trial of violating 18 U.S.C. § 1708 (1964).[1] The count on which defendant was convicted alleged that on November 9, 1964, he unlawfully, willfully and knowingly possessed the contents of a package, i. e., six emeralds allegedly worth $152,190, which had been stolen or taken from the Mail Division of the Appraisers' Stores, United States Customs, at 201 Varick Street, in New York City, knowing the same to have been stolen or taken.[2]

Defendant was a clerical employee of the Customs Service. He worked in the Mail Division of the Appraisers' Stores, on the sixth floor of a federal building in New York. It was his job to complete notices of arrival of parcels over $250 in value received through the mail from overseas and to mail the completed notices to the consignees of the parcels.

On November 9, 1964, a package containing six emeralds worth $152,190 dis-

[1] "Theft or receipt of stolen mail matter generally

"Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or * * *

"Whoever buys, receives, or conceals, or unlawfully has in his possession, any

349 F.2d—55

letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both. * * *"

[2] Another count of the indictment alleged that defendant had stolen the package in violation of § 1708. This count was dismissed with the Government's consent at the close of the taking of evidence. See United States v. Weeks, 327 F.2d 656 (2d Cir. 1963).

appeared from the office in which defendant worked. The package was last seen on a chair beside defendant's desk.

The Government's case against defendant rested entirely on circumstantial evidence. Government agents and others gave detailed accounts of the movements of the package containing the emeralds until it disappeared, and of the activities of defendant on the day of their disappearance. They also testified to evidence found in a search of defendant's person, clothing and home which indicated his illegal possession of the emeralds and to contradictory statements taken from the defendant on the night of the gems' disappearance.

The defendant appeals the judgment of conviction on four grounds: (1) that the facts as alleged in the indictment and proved at trial do not constitute a violation of the statute proscribing the knowing possession of stolen mail; (2) that the evidence was insufficient for conviction; (3) that evidence obtained by government agents from defendant's work jacket was unconstitutionally seized and introduced at trial; and (4) that evidence obtained in a search of defendant's person, clothing and home without a search warrant was also unconstitutionally seized and introduced into evidence. We affirm the conviction.

## I. Applicability of the statute

■ The defendant argues that when government agents took the package containing the emeralds out of the usual course of the mails on Wednesday, November 4, 1964, photographed and made a sketch of it, took it to the General Post Office where a fluorescent dye was injected into it and did not return it to the Mail Division of the United States Customs until Friday, November 6, "it lost its character as mail." However, it has long been held under similar statutes that decoy letters to fictitious addresses, which are intended to detect mail thefts, constitute mail, e. g., Goode

v. United States, 159 U.S. 663, 16 S.Ct. 136, 40 L.Ed. 297 (1895). Genuine mail temporarily withdrawn from its usual course and treated by government agents for the same purpose is also none the less mail. See Ennis v. United States, 154 F. 842 (2d Cir. 1907).

■ Defendant also contends that the statute is not applicable because the package when last seen was near the desk of a Customs employee, from which it was supposed to have been stolen, and was not, he argues, in the custody of the Post Office Department. However, the Government cites a group of regulations [3] that authorize clearance and inspection of overseas mail by the United States Customs before ultimate delivery, and there was evidence that defendant's desk was in the usual channel of such mail. Thus, the statute was applicable since the package was "stolen, taken, embezzled, or abstracted" from a "mail route or other authorized depository for mail matter." 18 U.S.C. § 1708 (1964); see Rosen v. United States, 245 U.S. 467, 472–473, 38 S.Ct. 148, 62 L.Ed. 406 (1918).

## II. Sufficiency of the evidence

[3] The defendant's contention that the evidence was too scanty and circumstantial to justify conviction is frivolous in the light of the overwhelming evidence of guilt produced at the trial. Government agents testified that they watched the progress of the package from concealed peepholes in a gallery overlooking the Mail Division floor until it disappeared, that other undercover agents working in the office watched both the package and defendant, that the package reached defendant's desk Friday, November 6, that defendant appeared to read the special customs invoice, which indicated the value in Swiss francs of its contents, that defendant kept the package on or about his desk except for the weekend when it was put into a safe by government agents, that it was last seen on a chair beside defendant's desk

3. 39 C.F.R. §§ 151.1–.5 (1962 & 1965 Supp.) (Subchapter P—Importations; Part 151—Customs).

on Monday, November 9, at 10:55 A.M., that at 11:00 A.M. he was seen walking hurriedly away from the desk with his arm stiff against his right side, and that the package could not be found in the Mail Division despite the efforts of government agents during the afternoon and evening of that day. Nevertheless, the defendant denied ever having seen or handled this package.

It was agreed by all that the defendant signed out on Monday, November 9, one hour earlier than usual; witnesses testified that he gave several different reasons for leaving early. The defendant claimed that upon leaving his office he walked across lower Manhattan to his home on East 10th Street, but two government agents and a coemployee, Gennaro Ungaro, testified that Ungaro drove the defendant uptown to 72nd Street. Defendant expressly denied making any such trip. Finally, there were several other contradictions on collateral matters from which the jury might also have discredited defendant's testimony.

Defendant's work jacket was found to contain two rubber bands and a piece of paper which glowed under the investigators' fluorescent lamp. An expert witness testified that the fluorescent detection dye found on these objects was identical in type to the dye injected into the stolen package. An employee of the Geneva, Switzerland, jeweler who had sent the package identified the slip of paper with her handwriting on it as the same paper she had wrapped into the package. Articles of clothing found in defendant's home also glowed green under the fluorescent lamp, as well as parts of defendant's body including his hands and crotch. Defendant's pocket knife had the same dye on it.

From this evidence the jury was amply justified in finding beyond a reasonable doubt that the defendant knowingly possessed the contents of the stolen package.

### III. Search of defendant's work jacket

■■ Defendant's principal point on this appeal is that government agents violated the Fourth Amendment proscription against "unreasonable searches and seizures" of his "effects" when they searched his work jacket as it hung on a rack in his supervisor's outer office without a warrant or his express consent. The defendant properly raised this point in the district court by a pretrial motion to suppress (Rule 41(e) of the Federal Rules of Criminal Procedure [4]) and by an objection at the trial when the jacket was offered in evidence. Judge Tyler denied the pretrial motion on the ground that Customs agents are authorized to make border searches under Rev.Stat. § 3061 (1875), 19 U.S.C. § 482 (1958),[5] and because, as the agents testified, they first searched the jacket by visual inspection only, using the fluorescent lamp, and seized the jacket and its contents only after they discovered that it contained two rubber bands and a piece of paper that revealed traces of the fluorescent detection dye. At trial Judge Mishler properly relied on the previous ruling, no other evidence on the issue having been offered.

■ We do not find it necessary to pass upon the sufficiency of the grounds asserted and sustained in the district court, since we rest our holding that the search and seizure were reasonable on a broader ground of legality. We have no doubt that the search of defendant's

4. Under this rule "[a] person aggrieved by an unlawful search and seizure may move" for the suppression of the property seized as evidence; however, such a motion "shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

5. See also Cotzhausen v. Nazro, 107 U.S. 215, 2 S.Ct. 503, 27 L.Ed. 540 (1883). Compare Bolger v. United States, 189 F. Supp. 237, 250–251 (S.D.N.Y.1960), aff'd sub nom. Bolger v. Cleary, 293 F.2d 368 (2d Cir.), rev'd on other grounds, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1962).

work area, including the surface and interior of his desk, conducted by Customs Agent McDonnell and Post Office Inspector Forster was a constitutional exercise of the power of the Government as defendant's employer, to supervise and investigate the performance of his duties as a Customs employee. Defendant was handling valuable mail for which the Government was responsible. The agents were not investigating a crime unconnected with the performance of defendant's duties as a Customs employee. Cf. United States v. Blok, 88 U.S.App.D.C. 326, 188 F.2d 1019 (D.C.Cir. 1951). In the Blok case the court held unreasonable the search by a District of Columbia policeman, who was investigating petty larceny, of "a desk assigned to [defendant's] exclusive use in the government office where she was employed." Ibid. The court specifically distinguished a case like the present case:

"No doubt a search of [her desk] * * * without her consent would have been reasonable if made by some people in some circumstances. Her official superiors might reasonably have searched the desk for official property needed for official use." 188 F.2d at 1021.

■ The combined authority of Customs and postal agents to open incoming mail is extremely broad by reason of both statute and regulations. See United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied sub nom. Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965). The authority of these agents to search the public areas of a government building in order to retrieve a mail package or its contents and to investigate their disappearance must be no less. The room in which defendant's work jacket was hung was his supervisor's outer office, a public area which was not shown to be segregated for private purposes from the other work areas of the Mail Division.[6]

The necessity of the Government to search for lost or stolen mail in a postal area or for lost or stolen property in a Customs facility is no less great than the necessity of the military to search a soldier's living quarters for stolen government property, United States v. Grisby, 335 F.2d 652 (4th Cir. 1964), or the necessity of government agents to demand the production of, and seize, public property, held by a suspect in his locked office subject to inspection and recall by the Government, Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946) (ration coupons).

We hold, then, that, in the circumstances of this case, the search by government agents who were investigating the theft of property connected with the defendant's employment, of defendant's work jacket hanging in a public area in the Government office where he was employed, was reasonable within the intendment of the Fourth Amendment and, therefore, not unconstitutional.

### IV. The search of defendant's person and apartment

■ Government agents McDonnell and Forster found the incriminating evidence in defendant's work jacket at 201 Varick Street in Manhattan at about 5:00 P.M. They then obviously had "probable cause" to suspect defendant of committing the crime for which he was indicted and convicted. This was found by the district court in ruling on the pretrial motion and on the objection during trial and their findings are not clearly erroneous.

Customs Agent McDonnell also had probable cause to arrest defendant for the crime of removing goods unlawfully

---

6. As a matter of fact, a locker area is located on the ninth floor of the building, where defendant was also seen on November 9. It was not shown whether defendant had a locker devoted to his exclusive use and we imply nothing as to the constitutionality of a search of such a locker. Cf. State v. Robinson, 86 N.J. Super. 308, 206 A.2d 779 (Super.Ct.1965) (upholding search by employer's private detective of employee's locker).

from customs custody in violation of 18 U.S.C. § 549 (1964),[7] for which the agent had authority to arrest under Section 581 (f) of the Tariff Act of 1930.[8] Whether the defendant might have been indicted and convicted under § 549 for unlawful removal of the package from Customs custody, as well as § 1708, for the knowing possession of stolen mail, is a question that need not be decided here. In any event, Agent McDonnell had authority for defendant's arrest.

█ The defendant argues that the warrantless search of his person, clothing and apartment by government agents and the introduction at trial of the evidence found in that search was invalid because the arrest was not consummated until after the search was completed. However, the district court found on the pretrial ruling and during trial that the arrest occurred very shortly after the agents entered defendant's apartment at about 6:00 P.M. and before they searched defendant's person, clothing and apartment. Both Customs Agent McDonnell and Post Office Inspector Forster testified that, although the word "arrest" was not used, they told defendant they were holding him for the theft of the package. Defendant himself testified to the contrary, and argues, from the evidence of his own statement dictated to another agent later that night, that he was not told he was under arrest until the early

morning of November 10, but until then was merely "a suspect in an investigation." Although this statement was excluded from evidence under the rule of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the defendant contends that since the statement was "prepared and typewritten" by a government agent, it is undeniable proof that defendant had not been arrested. Without reaching the question whether the defendant is estopped from using this statement against the Government, having moved to exclude it at trial, we do not find this evidence very convincing. A person arrested because of an agent's probable cause for believing him guilty of a crime does not cease to be "a suspect." See id. at 490–492, 84 S.Ct. 1758. The concepts of being a "suspect" and of being an "accused" are hardly discrete categories. The ambiguous wording of another question by the agent, "Did you come to this office for questioning freely and voluntarily with a view of cooperating fully in this investigation?" is no more convincing. The fact that defendant was informed at his door of his right to remain silent and his right to obtain counsel is indicative of his status as a person arrested or "accused," rather than being merely investigated for the crime.

We conclude that the district court was not clearly in error in holding that the

7. "Removing goods from customs custody; breaking seals

> \*     \*     \*     \*     \*
>
> "*Whoever* maliciously enters any bonded warehouse or any vessel or vehicle laden with or containing bonded merchandise with intent unlawfully to remove therefrom any merchandise or baggage therein, or *unlawfully removes any merchandise* or baggage in such vessel, vehicle, or bonded warehouse or otherwise *in customs custody or control;* or
>
> "Whoever receives or transports any merchandise or baggage unlawfully removed from any such vessel, vehicle, or warehouse, knowing the same to have been unlawfully removed—
>
> "Shall be fined not more than $5,000 or imprisoned not more than two years, or both." (Emphasis added.)

8. "It shall be the duty of the several officers of the customs \* \* \* to arrest any person who shall become liable to arrest, by virtue of any law respecting the revenue, as well without as within their respective districts, and to use all necessary force to \* \* \* arrest the same." 49 Stat. 522 (1935), 19 U.S.C. § 1581(f) (1958). The authority of the other agents is found in Rev.Stat. § 3071 (1875), 19 U.S.C. § 507 (1958), which states that a customs officer "shall have authority to demand of any person within the distance of three miles to assist him in making any arrests, search, or seizure authorized by this title, where such assistance may be necessary \* \* \*."

search of defendant's person and home followed, and was incident to, a lawful arrest, and was, therefore, reasonable under the Fourth Amendment.

Affirmed.