**UNITED STATES of America**

v.

**Kenneth O'Neal MOODY.**

**Crim. No. 69–218.**

United States District Court,
D. South Carolina,
Greenville Division.

April 9, 1970.

Joseph O. Rogers, Jr., U. S. Atty., D. South Carolina, and Ryan C. Shealy, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

Sol E. Abrams, and Robert Bell, of Abrams, Bowen & Townes, Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Before the court is defendant Moody's Motion[1] to Suppress evidence, oral and tangible, obtained directly or indirectly, at a search of a trailer located adjoining the premises of Kenneth O'Neal Moody in March 1969. Moody is charged with interstate transportation of a stolen trailer, knowing the same to be stolen. He insists he is entitled to relief under Rule 41(e), Federal Rules of Criminal Procedure.

This court's decision is narrowed to the application of the motion as to that evidence obtained as a result of the inspection of a trailmobile trailer parked on a public street adjacent to his residence in the Brookland School area of Greenville, South Carolina. Also under attack are any and all statements made by defendant during interviews or interrogations incidental to and at the scene of the inspection.

The basis of the motion is that the search and interview were not incident to a lawful arrest, that neither search nor arrest warrant were obtained or served, and defendant did not freely and voluntarily consent to the search or the interview. The government opposes upon the grounds that (1) what the officers saw was in plain view and there was no search; (2) if the action of the officers be considered a search, it was not an unreasonable search; and (3) the defendant, after having been warned of his rights, fully, including the right not to allow the search, voluntarily consented and voluntarily made statements seeking to exculpate himself.

A hearing was held on April 2, 1970, at which the defendant appeared with his attorney. The court received testimony from a special agent of the Federal Bureau of Investigation, Frank J. Mills, Jr., and from Mr. Wiggins of the South Carolina Highway Patrol. The defendant elected not to testify. This court considers the entire record and recites credible facts in order that the climate of the testimony may be reflected in this order.

## FINDINGS OF FACT

1. In March 1969, the Federal Bureau of Investigation received information that the trailer that had been stolen was parked by the defendant's residence in the City of Greenville, South Carolina. The South Carolina Highway Patrol had also received information describing a stolen trailer and had observed the trailer parked in the defendant's home locality.

2. Special Agent Frank Mills, of the Federal Bureau of Investigation, with Captain Williams, of the South Carolina Highway Patrol, seeking to confirm suspicions concerning the trailer, parked adjoining the defendant's residence in the public street, went to the location of the trailer and the residence of the defendant Kenneth O'Neal Moody to investigate the trailer.

3. Agent Mills had in his possession certain serial numbers of the trailer, a description of the tires and (a) number or numbers identifying a refrigeration unit on the trailer. On March 17, 1969, he and Federal Bureau of Investigation Agent Shannon went to Brookland School, were met there by Captain L. O.

---

[1]. [Moves] for an order suppressing:

A. All evidence, oral or tangible, obtained directly or indirectly from:

1. The defendant, Kenneth O'Neal Moody;

2. Any inspection or search of his premises or of any property located thereon or thereat including, but not limited to, one Trailmobile trailer;

3. Any seizure of property located thereon or thereat, including, but not limited to, one Trailmobile trailer.

4. Any interview with, or interrogation of the defendant, Kenneth O'Neal Moody.

B. All reports, statements or possible testimony by goverment agents or other government witnesses based upon any or all of the aforementioned inspections, searches, seizures, interviews or interrogations or observations made by any government agents or prospective government witnesses at the times and places and in the manners hereinabove mentioned.

Wiggins of the South Carolina Highway Patrol and two other patrolmen. Before approaching Moody's house they observed the trailer which had a South Carolina license on it. Wiggins and Mills drove up to Moody's home, and rang the door bell. Mrs. Moody answered and they asked for him and he appeared. There is some dispute as to whether he then went back into the house to put his shoes on, but that is not material. Mills informed Moody that they desired to talk to him and to look at the trailer. Mills handed Moody a waiver form (Government's Exhibit #1)[2] which he read and signed. Mills told Moody that the latter had the right to stop him from looking at the trailer. Moody stated he had no objection and went with him. There was no discussion with Moody before he was advised of his rights and signed the "Waiver of Rights." Neither search nor arrest warrant had been obtained, and, of course, neither was served.

4. The trailer was in the public road. Without going inside the officers could see the number on the license plate, the number on the refrigeration unit (outside), and the number on the rug rail inside. It is apparent that these numbers were sufficient to identify the trailer as a trailer stolen in Massachusetts and which the Federal Bureau of Investigation had been looking for. At no time was Moody in custody or under arrest. No official restricted his movements or gave him instruction or direction of movement. Mills described as appearing calm rather than upset. This is corrob-

orated by the fact that he asked to move the furniture inside and the officers assisted him in unloading the furniture and taking it to his brother's house. Moody voluntarily removed the license plate, which was registered in the name of a trustee for Standard Coffee Company, and gave the plate and registration papers to Wiggins. After unloading the officers impounded the trailer, but did not arrest or restrict Moody.

5. Only Mills and Wiggins went on the premises and searched the trailer. Mills was in civilian cloths and Wiggins in uniform complete with pistol. Standing by was another F.B.I. agent and two highway patrolmen who remained in cars in the street during the search. They were in full view of Moody but did not go to the premises until after the search.

6. While in the public road in front of the trailer Moody told Mills and Wiggins the trailer had been given to him by an unknown truck driver at Hogan's Truck Stop outside of Chicago. Moody said his first contact with the unknown driver was 6 to 8 weeks earlier at Hogan's. This driver told Moody to take the trailer and run it and that Moody could pay $1000.00 and take up the payments. Later, someone called Mills from the office of Attorney Sol Abrams of Greenville and gave the name Ralph Sloan as the name of the driver.

CONCLUSIONS OF LAW

■■■ 1. Defendant has properly and timely presented his motion before trial. United States v. Marshall, 24 F.

2. "Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any

time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed  Kenneth O. Moody"

R.D. 505 (D.C.D.C.1960); United States v. Weldon, 384 F.2d 772 (2nd Cir. 1967); United States v. Milanovitch, 303 F.2d 626 (4th Cir. 1962). He has standing to make the motion as he claims to be "a person aggrieved by an unlawful search and seizure." Rule 41 (e), Federal Rules of Criminal Procedure; Simmons v. United States (1968) 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L. Ed.2d 1247. The court is required to receive evidence on any issue of fact necessary to a decision on the motion. Hoffritz v. United States, 240 F.2d 109 (9th Cir. 1956); Battle v. United States (1965) 120 U.S.App.D.C. 221, 345 F.2d 438. Since the search was claimed to be illegal and it was admitted that no search warrant was used this court placed the burden on the government. United States v. Jeffers (1951) 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59; Williams v. United States (5th Cir. 1967) 382 F.2d 48. Because a denial of a motion to suppress is usually the law of the case,[3] this court carefully reviewed the evidence.

██ 2. What the officers saw was in plain view and there was not a search. The testimony of Captain Williams and F.B.I. Agent Frank Mills showed that what was seen and also what was impounded for evidence was in plain view and that this was not a search. Stated in Ker v. California, 374 U.S. 23, 83 S. Ct. 1623, 10 L.Ed.2d 726; Trujillo v. United States, 294 F.2d 583 (10th Cir. 1961); both cases being cited in United States v. Self, 410 F.2d 984 (10th Cir. 1969), is the following: "The observation of the license number was not a search because the officer 'merely saw what was placed before him in full view.'"

3. In Harris v. United States, 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, a 1968 case, the door of a car, which had been impounded as evidence of a robbery, was opened and the officer saw in plain view the automobile registration card belonging to the victim of the robbery. The defendant objected to the introduction of this card in evidence. The Supreme Court held that the registration card was not discovered by means of an illegal search, and declared in part "Objects falling in the plain view of an officer who has a right to be in the position to have the view are subject to seizure and may be introduced in evidence." The uncontradicted testimony of this case showed the observations were made on a public street where the officers had a right to be.

██ 4. The search conducted was no unreasonable search. The Fourth Amendment prohibits only unreasonable searches and seizures, and there is no showing here that the action of the F. B.I. agents under the particular circumstances was unreasonable or in any way in violation of the United States Constitution. Weaver v. United States (5th Cir.) 374 F.2d 878 (dictum). In United States v. Self (10th Cir.) 410 F.2d 984, a 1969 case, where the defendants, as here, were not under arrest, the court said: "If the opening of the car door and observation of the steering post was a search, it was a reasonable search in the circumstances presented." In Pasterchik v. United States (9th Cir.) 400 F.2d 696, a 1968 case, the court stated: "As noted previously the agents also obtained the engine and serial number of the Thunderbird by raising the hood of the car and by opening the left front door. Under similar circumstances, our court has previously held that: "Even if the mere opening of the door to look at the number was a search, it was a reasonable one." Cotton v. United States, 371 F.2d 385 (9th Cir. 1967). Furthermore, we wrote that "when a policeman or a Federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the

3. United States v. Collins (2nd Cir. 1965), 349 F.2d 863, cert. den. 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303.

motor number, and * * * he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him." In Holt v. Simpson (7th Cir.) 340 F.2d 853, the court stated: "The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case * * * that criterion * * * depends upon * * * the total atmosphere of the case."

If the viewing of the identifying numbers, from outside the trailer was a search, it was reasonable. After Moody had voluntarily consented to the search and the officers went on the inside they found no evidence they did not already have without the inside search.

■ 5. Defendant contends that the presence of the officers and the general climate surrounding the identification of the trailer was of such nature as to coerce him into the cooperation which the evidence shows he gave. The court finds nothing to indicate Moody was under any pressure or tension at the time of identification (search?).

■ The evidence clearly shows that Moody consented to a search and that he was adequately and timely informed of his constitutional rights. Only one officer was present with any firearms that could be seen. The defendant was not in hostile surroundings, but in the friendly atmosphere of his home, which was in no way invaded by the officers. He is not a child or juvenile, but a grown married man. The defendant fully signed a statement that he had been informed of his constitutional rights to remain silent and to have an attorney. Testimony showed he was informed of who the officers were and the nature of their visit, and willingly accompanied them, after going back in the house to dress, beyond his home or curtilage to the public street where the trailer in question was parked. A waiver of a constitutional right must be "an intentional relinquishment or abandonment of a known right or privilege;" Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, and that consent to an otherwise unprivileged search must be intelligent and voluntary. United States v. Blalock (D.C.) 255 F.Supp. 268. The Government has met this burden concerning waiver, and the totality of the circumstances shows no invasion of the defendant's rights that can be considered an unreasonable search violating any constitutional right protected by the Fourth or Fifth Amendments.

■ 6. This court has examined that which Moody said or did in the light of Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Davis v. North Carolina,[4] Garrity v. New Jersey,[5] and other cases. Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, speaks of mental and physical coercion. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948, speaks of "subtle pressures." However, as is said in *Garrity*, supra, "The cases are quite different from the situation where one is anxious to make a clean breast of the whole affair volunteers the information." Such is the case here. Once F.B.I. Agent Mills identified himself, Moody clearly showed he was anxious to make a clean breast of the whole affair. He signed a waiver. He freely accompanied them to the trailer. He gave Captain Wiggins the license plate and registration papers. He asked to take his brother's furniture to him and was permitted and assisted. His movements were never restricted or diverted as much as one single step. The prohibitions of *Miranda*, supra, are not infringed here. The conduct of the officers was in keeping and in timing with *Miranda's* guidelines.

The Motion to Suppress is denied.

And it is so ordered.

---

4. 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed. 2d 895 (1966).

5. 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562.