**UNITED STATES of America**

v.

**Luis MARTI, Defendant.**

**No. 68 Cr. 149.**

United States District Court, E. D. New York.

April 16, 1970.

Williams & Connolly, Washington, D. C., for defendant; Raymond W. Bergan, Washington, D. C., Patrick M. Wall, New York City, of counsel.

Edward R. Neaher, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for plaintiff; David Steinman, Andrew B. Baker, Jr., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

### I.

The defendant, charged with the transportation of a stolen necklace in interstate commerce (18 U.S.C. § 2314) and with violation of the Export Control Act (50 U.S.C. App. § 2021 et seq.), has moved to suppress jewelry seized by Customs Agents at John F. Kennedy International Airport after a warrantless search of his suitcase. For the reasons discussed below his motion is denied.

### II.

Customs Agent George Brosan learned from a confidential informant sometime during the late evening of October 25 or early morning of October 26, 1967 that the defendant, Luis Marti, would be carrying stolen jewelry when leaving on a Lufthansa Airlines flight from New York City to Guayquil, Ecuador on Saturday, October 28. While Agent Brosan had never had prior dealings with this informant he had previously been told by another Customs Agent that his information had led to seizures of contraband and arrests on at least two occasions.

Attempting to verify this intelligence, Agent Brosan contacted Lufthansa Airlines on Thursday and Friday. On both occasions he was told that no reservations had been made in the name of the defendant. On Saturday morning inquiry revealed that the defendant had a reservation on the flight to Guayquil leaving John F. Kennedy International Airport that afternoon at 3:10. Agent Brosan, several other Customs Agents and a New York City Police Officer proceeded to the airport and established a surveillance of the Lufthansa check-in counters. Agent Brosan testified that the New York authorities were notified because of a general suspicion held by federal and local police officials that the defendant was a prominent dealer in pornographic materials.

Less than ten minutes before scheduled takeoff, the defendant appeared and was observed depositing a large suitcase at a Lufthansa counter and then, while carrying an attache case, checking in at the ticket counter. Identifying himself as a Customs Agent, both orally and by showing his badge, Agent Brosan asked the defendant if he would accompany him to the baggage area in the rear of the terminal. The defendant consented and upon approaching the baggage area asked, "What is this all about?" He was told that this was a "customs search."

At the request of Agent Brosan the defendant pointed out his suitcase which was removed from the conveyor belt by another agent. The defendant was then asked by Agent Brosan if he had anything that he should declare or that he should not have in his possession. In response the defendant held up his attache case and stated that there was a gun in it. Another agent took the case

**62**

from him, opened it, and discovered a pistol.

The defendant was then taken to a Lufthansa office where his large suitcase was opened and found to contain several hundred pieces of jewelry. Agent Brosan inquired if he had an export license for the jewelry. Receiving no answer, the defendant was arrested for failure to comply with the Export Control Act. He was later indicted for both that offense and for the knowing transfer of stolen goods in interstate commerce. For the purposes of this motion it is conceded that the jewelry was stolen.

At no time between the receipt of the informant's tip by Agent Brosan and the eventual arrest of the defendant on Saturday afternoon did Agent Brosan or any other law enforcement official attempt to secure either an arrest or a search warrant. The defendant contends that probable cause for an arrest without a warrant did not exist, or if it did, that the absence of an arrest or of a search warrant, when there was time to obtain one, made the search illegal. The government justifies its actions on the ground that applicable "border" or "customs" search rules apply, obviating the need for warrants or an arrest on probable cause prior to the search.

### III.

The variable nature of the "unreasonable search and seizure" concept is evidenced by the rules covering "border" or "customs" searches. Once within the scope of these rules traditional warrant and probable cause requirements are substantially relaxed. Judicially sanctioned statutes give customs agents and officials broad authority to search without a warrant. *See, e. g.,* United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969) (importation of heroin); Landau v. United States Attorney, 82 F.2d 285, 286 (2d Cir.), cert. denied, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936) (importation of watches). "[M]ere suspicion of possible illegal activity within their jurisdiction is enough 'cause' to permit a customs officer to stop and search a person." United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969). *See also, e. g.,* Rodriguez-Gonzalez v. United States, 378 F.2d 256, 258 (9th Cir. 1967) (importation of marijuana); Alexander v. United States, 362 F.2d 379, 382 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L. Ed.2d 439 (1966) (importation of heroin); Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967) (same).

This "border" or "customs" search exception was developed to assist in excluding contraband coming into the country. *See* 19 U.S.C. § 482 ("stop, search, and examine * * * any vehicle, beast, or person, on which or whom he or they shall suspect there is *merchandise* which is subject to duty, or shall have been *introduced into the United States* in any manner contrary to law * * *."); 19 U.S.C. § 1496 (examination "of the baggage of any *person arriving* in the United States * * *."); 19 U.S.C. § 1499 (inspection, examination and appraisal of "[i]*mported merchandise*"); 19 U.S.C. § 1582 ("search by authorized officers or agents * * *" of "all *persons coming into* the United States from foreign countries * * *."); 19 U.S.C. § 1581 (boarding of "any vessel or vehicle at any place * * * and search * * * any cargo on board * * *."). (Emphasis supplied.) *See also, e. g.,* United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967); King v. United States, 348 F.2d 814, 818 (9th Cir.), cert. denied, 382 U. S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965).

Justification under the Fourth Amendment is based on practical and historical considerations involving experience with difficulties in controlling smuggling into the country that antedated adoption of the Constitution. Carroll

v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925); United States v. Sohnen, 298 F.Supp. 51, 54 (E.D.N.Y.1969). *Cf.* Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 528, 29 L.Ed. 746 (1886). Whether these import border search rules apply to the search of a person and his baggage as he is about to depart from the country is an issue we need not decide. since the relevant statutes authorize such searches only where probable cause is found to exist. *But cf.* United States v. Grandi, 424 F.2d 399 (2d Cir. 1970) (indicating that in international travel the difference between departing and arriving is one of relativity, depending upon which country is examining the traveller; the police of the two countries often cooperate).

■ Concern over limiting and controlling exports is a relatively recent phenomenon associated with the use of trade as a direct instrument of diplomacy and war. 50 U.S.C. App. §§ 2021–2032, popularly known as the Export Control Act of 1949; *cf.* 22 U.S.C. § 401, adopted in 1917 and subsequently amended. Congress has not dealt explicitly with export searches. Nevertheless, the language of the export control statutes and regulations, as well as the practical difficulties in enforcement lead to the conclusion that Congress has authorized, and the Constitution permits, a search to control goods leaving the country without the need for either a lawful arrest or warrant.

Section 401(a) of title 22 permits seizure of articles sought to be exported in violation of law. In relevant part it reads:

> *Whenever an attempt is made to* export or ship from or *take out of the United States* any arms or munitions or other *articles in violation of law,* or whenever it is known or there shall be probable cause to believe that any arms or munitions of war or other articles are intended to be or are being or have been exported or removed from the United States in violation of

law, the Secretary of the Treasury, or *any person duly authorized for the purpose by the President, may seize and detain such* arms or munitions of war or other *articles * * *.* (Emphasis supplied.)

Under subdivision (b) of section 401 provision is made for forfeiture proceedings.

■ While section 401 was primarily directed to limiting the export of war materials in protection of American neutrality and foreign policy, it has been consistently applied to other classes of goods. *See* Waisbord v. United States, 183 F.2d 34 (5th Cir. 1950) (jewelry); United States v. Chabot, 193 F.2d 287, 290–291 (2d Cir. 1951) (gold); United States v. 251 Ladies Dresses, 53 F.Supp. 772, 774 (S.D.Texas 1943). The House Report relating to the 1953 Amendment of section 401 makes it clear that the export seizure provisions of section 401 were designed to apply to violations of the Export Control Act. H.Rep. No. 114, 1953 U.S. Code Cong. & Admin. News, p. 2386; *see also* letter of Acting Secretary of Treasury, *Id.* at 2387.

■■ Subdivision (a) of section 401 explicitly mentions the power to seize; it does not use the word "search." There is a difference between the two terms. "A search is a probing exploration for something that is concealed or hidden from the searcher; a seizure is a forcible or secretive dispossession of something against the will of the possessor or owner." United States v. Haden, 397 F.2d 460, 465 (7th Cir. 1968). Nevertheless, the Fifth Circuit has recently indicated that power to seize implies some authority to search. It held that under the authority of section 401, customs agents "were entitled to detain the car, make a reasonable search and seize the arms." Samora v. United States, 406 F.2d 1095, 1098 (1969).

This construction is desirable if the seizure on probable cause authorized by section 401 is not to be vitiated. An agent may not seize contraband until he confirms his belief that such material is,

in fact, being exported or removed from the United States. Confirmation can usually come only from a preliminary search. In this connection it is significant that the statute held to authorize a warrantless *search* in Carroll v. United States, 267 U.S. 132, 144, 45 S.Ct. 280, 282, 69 L.Ed. 543 (1925)—section 26, title 2 of the National Prohibition Act—dealt only with the *seizure* of intoxicating liquor. *See also* United States v. Francolino, 367 F.2d 1013, 1018 (2d Cir. 1966), cert. denied, 386 U.S. 960, 87 S. Ct. 1020, 18 L.Ed.2d 110 (1967) (forfeiture of contraband provisions, 49 U.S.C. §§ 781–784, authorize warrantless search of automobile) (alternate holding).

Pursuant to the President's authority to establish export regulations (50 U.S.C. App. § 2023(a)), two relevant regulations have been promulgated—one permits the Customs Office to prevent loading on a carrier upon reasonable cause to believe the export regulations are being violated and the other permits a search of an exporting carrier. 15 C.F.R. § 379.8(c) provides:

> The Customs Office is authorized to prevent the loading of commodities * * * on a carrier whenever it has reasonable cause to believe such commodities * * * are being exported or removed from the United States contrary to the provisions of the Export Regulations.

15 C.F.R. § 379.8(d) reads:

> The Customs Office is authorized to inspect and search any exporting carrier at any time to determine whether commodities * * * are intended to be, or are being, exported or removed from the United States contrary to the provisions of the Export Regulations.

■ Viewed together, these statutes and regulations provide customs agents with broad authority to conduct exit searches while enforcing the Export Control Act. *Cf.* United States v. Collins, 349 F.2d 863, 868 (2d Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303, rehearing denied, 384 U.S. 947, 86 S.Ct. 1469, 16 L.Ed.2d 545 (1966). They may act for the Customs Office in enforcing the seizure provisions of section 401. Samora v. United States, 406 F.2d 1095, 1098 (5th Cir. 1969); Bush v. United States, 389 F.2d 485 (5th Cir. 1968); United States v. Chabot, 193 F.2d 287 (2d Cir. 1951). They must, and may, act swiftly when export is imminent. United States v. One North American Airplane, 197 F.2d 635, 639 (3d Cir. 1952); United States v. Moreno, 182 F.2d 258, 259 (5th Cir. 1950); Rubin v. United States, 289 F.2d 195, 199 (5th Cir. 1961). They may inspect and search not only the vessel or aircraft of the exporting carrier but its terminal, loading and passenger facilities and surrounding areas. United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968), cert. denied, 393 U.S. 112, 89 S. Ct. 999, 22 L.Ed.2d 126 (1969). *Cf.* United States v. Collins, 349 F.2d 863, 868 (2d Cir. 1965), cert. denied, 383 U. S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303, rehearing denied, 384 U.S. 947, 86 S.Ct. 1469, 16 L.Ed.2d 545 (1966).

Both subdivision (a) of section 401 and subdivision (c) of Regulation 379.8 speak in terms of "reasonable" or probable cause. Subdivision (d) of Regulation 379.8 uses no such limiting language and it might be interpreted as justifying an exit search even without probable cause. *See* United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969). But the enabling statute is insufficiently precise to justify such a drastic result where air travel is involved. *Cf.* 19 U.S.C. §§ 1401(a), (b), 1581(a) authorizing, at "any time," boarding of "vessels," or "vehicles," not including "aircraft," and searches of baggage on board. We hold that probable cause for the exit search is required.

## IV.

■ This statutory authorization to conduct warrantless exit searches in air terminals when there is probable cause to believe that the Export Control

Act is about to be violated is permissible under the Fourth Amendment. Although searches unaccompanied by warrants are highly disfavored, their use is permissible in exceptional circumstances. Katz v. United States, 389 U.S. 347, 357, n. 19, 88 S.Ct. 507, 514, n. 19, 19 L.Ed.2d 576 (1967); United States v. Ventresca, 380 U.S. 102, 106–107, n. 2, 85 S.Ct. 741, 745, n. 2, 13 L.Ed.2d 684 (1965). The exit search constitutes one of these exceptions.

The difficulties involved in policing our international boundaries have been alluded to in the import search cases already cited. The millions of people passing rapidly through our busiest air terminals each year on trips to and from foreign lands make effective controls which will not clog and unduly delay commerce extremely difficult.

The departure of an individual by airplane is likely to provide the final opportunity to secure the fruits of a crime and evidence of illegal activity which he takes with him. Under such circumstances, there are many occasions when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." Camara v. Municipal Court, 387 U.S. 523, 533, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967). *See also* Dyke v. Taylor Implement Mfg. Co., Inc., 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538 (1968) ("Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office."); Hernandez v. United States, 353 F.2d 624 (9th Cir.), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966) (state search where passenger was about to board an interstate flight); *cf.* Corngold v. United States, 367 F.2d 1, 3 (9th Cir. 1966). To require a warrant in these circumstances would often allow the evidence to disappear without opportunity for a search.

Current terror attacks and hijackings of civilian aircraft further demonstrate the strong national interest in providing a reasonable yet effective means for searching the baggage of those emplaning for abroad. *Cf.* 18 U.S.C. App. § 1202. The carrying of a pistol by this very defendant suggests the need for great vigilance and control at airports.

## V.

Probable cause to justify a search without a warrant exists if "the facts and circumstances within [the Customs Agent's] knowledge and of which [he] had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense was being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 S.Ct. 543 (1925); Brinegar v. United States, 338 U.S. 160, 175–177, 69 S.Ct. 1302, 1310–1312, 93 L.Ed. 1879, rehearing denied, 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949). For, the purposes of this case, we assume, without deciding, that this warrantless search cannot be sustained on a lesser showing of probable cause than is required for the issuance of a search warrant. *Cf.* United States v. Ventresca, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965). Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), requires that hearsay information, to authorize a warrant, be supported by two kinds of foundations: first, "some of the underlying circumstances from which the informant concluded that the [objects] were where he claimed they were," and, second, "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.' " *Id.* at 114, 84 S.Ct. at 1514.

The specificity of the tip and independent police investigation verifying its details may provide a basis for concluding that the informant is speaking from personal knowledge, thus complying with *Aguilar's* first requirement. Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327

(1959); United States v. Acarino, 408 F.2d 512 (2d Cir.), cert. denied, 395 U.S. 961, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969). The court in Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969), referred to Draper v. United States, 358 U.S. 307, 78 S.Ct. 329, 3 L.Ed.2d 327 (1959), as providing a "suitable benchmark." There the informant had stated that Draper would return to Denver by train on one of two successive mornings, described his clothing, the bag he would have and reported that he would be carrying three ounces of heroin. *Id.* at 309, 78 S.Ct. at 331.

■ The facts provided by the informant in the instant case more than meet the *Draper* mark. He reported the defendant's name (a description was not necessary since the police had his picture), his destination, the airline he would be using, the approximate time of departure and that he would be carrying stolen jewelry.

On Saturday morning Agent Brosan verified the fact that the defendant had a reservation on the flight indicated. Then, after establishing a surveillance of the Lufthansa departure facilities it was determined that the defendant was about to leave. Given these verified details, the first requirement of *Aguilar* was satisfied.

The second test in *Aguilar* was also met in the instant case—Agent Brosan had sufficient reason to view the informant as reliable. Before the search he had been told by a fellow officer that on at least two occasions information supplied by the informant had led to seizures and arrests. United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 217 (2d Cir. 1967). He could rely on the information received from another agent. *See* United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965). In addition, the details verified before the search supported the reliability of the informant. *See* Spinelli v. United States, 393 U.S. 410, 416, 89 S.

Ct. 584, 589, 21 L.Ed.2d 637 (1969); Draper v. United States, 358 U.S. 307, 78 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Where, as in this case, the destination was Ecuador, a Shipper's Export Declaration had to be filed for a shipment valued at more than $100. 15 C.F.R. §§ 371.7, 379.1(a) (ii) (3). The jewelry involved was worth more than $100. Export without filing a Shipper's Export Declaration was, therefore, illegal. 50 U.S.C. App. § 2025. Probable cause thus existed at the time of the search of the defendant and his baggage to believe he was about to violate the Export Control Act and Regulations. The search was valid.

It is unnecessary to determine whether the search might have been justified as a search pursuant to a valid arrest. *Compare* United States v. Gorman, 355 F.2d 151, 159–160 (2d Cir. 1965) *with* United States v. Boston, 330 F.2d 937, 938–939 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964).

## VI.

■ The defendant argues that since Agent Brosan had sufficient time to obtain a search warrant, his failure to secure one invalidates the search. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Niro v. United States, 388 F.2d 535 (1st Cir. 1968). *But see* United States v. Tucker, 380 F.2d 206, 208, n. 1 (2d Cir. 1967) and United States v. McMillan, 368 F.2d 810, 812 (2d Cir. 1966), cert. denied, 386 U.S. 909, 87 S.Ct. 856, 17 L.Ed.2d 783 (1967).

Even if a search warrant would, under some circumstances, be required before a search of an air traveler's baggage when he is departing for abroad, it should not be required in a case such as the one before us. Not until shortly before the search, when the defendant actually made his reservation and then arrived at the airport, was there more than suspicion. It cannot be said that

the government either negligently or deliberately bypassed the opportunity to secure a warrant. *Trupiano* and *McDonald,* cited by the defendant, both involved long-term surveillances and even in *Niro* the agents conceded that probable cause existed twelve hours before the search. In the case before us the search and arrest was not delayed to avoid the necessity of a warrant. *Cf.* United States v. Sohnen, 298 F.Supp. 51 (E.D. N.Y.1969).

VII.

For the reasons indicated above defendant's motion to suppress the jewels seized after the search by Custom Agent Brosan is denied.

So ordered.