Shelby BUSH, Plaintiff-Appellant
Cross-Appellee,

v.

The PARISH OF ST. TAMMANY, et al., Defendants,

United States of America,
Defendant-Appellee
Cross-Appellant.

No. 83–3167.

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1984.

Geoffrey H. Longenecker, New Orleans, La., for plaintiff-appellant cross-appellee.

John Volz, U.S. Atty., Roy F. Blondeau, Jr., Asst. U.S. Atty., New Orleans, La., for defendant-appellee cross-appellant.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

H. Shelby Bush brought this action against the United States[1] under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1982), and the Tucker Act, 28 U.S.C. § 1346(a)(2) (1982). The district court awarded Bush damages of $500. We affirm.

## 1. THE FACTS

Shelby Bush became in July, 1977, the subject of an investigation by U.S. Customs Agent Leonard Lindheim for possible violations of federal customs laws.[2] Lindheim

---

1. The Parish of St. Tammany, four federal employees and four state law enforcement officers were originally named as defendants. The United States was substituted for the four individual federal employees, and Bush settled with the parish and the state law officers.

2. Bush was suspected of violating 18 U.S.C. § 545 (1982) (knowing possession of smuggled goods); 19 U.S.C. § 1497 (1982) (failure to declare articles brought into the country); and 18 U.S.C. §§ 2314, 2315 (1982) (transportation, receipt of stolen goods).

began his investigation of Bush when he learned from the Guatemalan Consulate that Bush had indicated to officials there that he had possession of certain Mayan or pre-Columbian artifacts. Lindheim also obtained Bush's letter to the Guatamalan Consulate which requested information about driving a car through Latin American countries.

Lindheim obtained the cooperation of Jose Miguel Prem, the Guatemalan General Consul, who wrote Bush and invited him to come to his office to discuss an exhibition permit which Bush had earlier sought. Lindheim and William Tuggle, another customs agent, were to be present at the meeting, posing as Tulane University archaeology students.

Bush responded affirmatively to Prem's invitation and attended their meeting on August 15, 1977. Lindheim and Tuggle were present and introduced to Bush as Tulane students. However, Bush brought only one small arrowhead to the meeting and Lindheim could not identify it as pre-Columbian. Bush told Lindheim that the remainder of the collection was hidden in Alabama; therefore, Lindheim invited him to bring some of the artifacts to Tulane.

Bush apparently became suspicious of Lindheim's true identity and accused him of being a customs agent. Lindheim gave Bush a customs undercover telephone number to call in order to make an appointment to see a Tulane collection of Mayan artifacts. Bush later called the number and made an appointment to see Lindheim the next day, but he did not appear as scheduled. Lindheim was then convinced that Bush had seen through his ruse.

Lindheim decided on August 17 to drive to Bush's residence located in a rural area close to Sun, Louisiana. Three agents accompanied Lindheim, one in an unmarked automobile with Lindheim and two in a separate unmarked automobile. While driving toward Bush's residence the agents met Bush, driving a green Cadillac and pulling a trailer. Lindheim decided to stop Bush and talk to him on the highway, preferring the "neutral site" over Bush's residence. He passed Bush's car and used his blinking blue emergency light to bring Bush to a stop. The second customs' car, with its light blinking, stopped behind Bush's car.

Lindheim got out of the passenger's side of his automobile and walked toward Bush, displaying his credentials and identifying himself as an agent. Lindheim asked Bush to speak to him but Bush fled in his car, almost hitting another customs agent who was standing on the driver's side of the front customs' vehicle. The agents pursued Bush until his automobile began swerving, swinging the trailer violently. They then fell back and stopped at a local grocery store, where Lindheim enlisted the aid of Sun Police Chief Joe Blackwell.

Blackwell and Lindheim subsequently stopped Bush again but Blackwell was unsuccessful in his attempt to get Bush to talk to him, because Bush saw Lindheim in the car. Blackwell and Lindheim did not see Bush again until they went to his residence after they heard radio reports that Bush was at his house breaking pottery. A stalemate followed for several hours at Bush's house. It ended when agent Henry convinced Bush to let him examine one of the pots in Bush's possession and the pot was identified as a pre-Columbian artifact. When Bush attempted to leave in his car, he struck the car of one of the policemen on the scene, striking the officer in turn. The policeman shot Bush in the face when he saw Bush's car begin to back towards him again. Bush surrendered and the remainder of his pottery was seized by the customs agents.

## 2. ISSUES

Bush initiated the appeal and raises six points. First, he claims that since the district court found that the stop was illegal, it erred by failing to find illegal all events subsequent to the stop. Second, he claims that the district court erred by failing to award him damages under the Tucker Act. Third, he claims that the United States should have been found responsible for the actions of the police officers who assisted in this matter and that excessive force was

used against him. Fourth, he claims that his Fourth Amendment rights were violated when the government arrested him at his home and seized his property without a warrant. Fifth, he claims the district court wrongfully denied him the chance to prove damages, erroneously deciding the issue on his proffer of evidence. Finally, he claims there was no legal basis initially for customs agents to investigate him.

The United States raises one issue on cross-appeal, arguing that the district court's decision that the initial stop of Bush was an illegal arrest was error. We will dispose of this issue first.

### 3. THE INITIAL STOP

#### A. District Court Findings

The district court found that "[t]he evidence at trial clearly showed that when Bush was stopped on the highway and confronted at his residence, he was placed under 'arrest'; he could not have reasonably believed that he was free to leave." The court then decided that the customs agents had no federal statutory authority to make an arrest, and proceeded to resolve the agents' authority as if they were private citizens. Finding that private citizens could have legally arrested Bush only if he had then committed a felony, which he had not, the court concluded that the arrest was illegal. The court then applied Louisiana tort law under the Federal Tort Claims Act in determining that the agents were liable for false arrest and imprisonment. The court awarded Bush only nominal damages, however, because he had not demonstrated that the stop caused him any physical suffering, pecuniary loss, or mental suffering and anguish.

Although we reach the same conclusion as the district court, we disagree with its rationale on two issues. First, we believe

that the court's finding that the agents had placed Bush under arrest when they stopped him on the highway is clearly erroneous. Second, we hold that the district court misapprehended the authority of the customs agents to stop Bush.

#### B. The Agents' Statutory Authority

■ Congress has given customs agents statutory authority, within their limited areas of duty, to stop vehicles, examine them, and make arrests. *See* 19 U.S.C. §§ 482, 1581 (1982). The district court correctly held that the customs agents had no authority under section 482 to stop Bush.[3] Section 482 requires agents to have a reasonable suspicion that the vehicle contains contraband before they may stop it.[4] The United States, however, claims that the stop was justified under section 1581(f), which provides in part:

It shall be the duty of the several officers of the customs ... to arrest any person who shall become liable to arrest, by virtue of any law respecting the revenue, as well without as within their respective districts, and to use all necessary force to seize or arrest the same.

19 U.S.C. § 1581(f) (1982). The district court found that section 1581(f) does not itself authorize customs agents to make arrests but merely imposes upon them the duty to make an arrest otherwise authorized by law. That court understood that only one federal statute, 26 U.S.C. § 7607 (1982), which deals with arrests for narcotics and marijuana violations, expressly grants customs agents the power to arrest. We see it differently.

■ Section 7607 authorizes *warrantless* searches by authorized persons and was originally enacted to aid law officers in

---

**3.** Section 482 provides in part:

Any of the officers or persons authorized to ... search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, wheth-

er by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law.... 19 U.S.C. § 482 (1982).

**4.** *See supra* note 3.

combating drug trafficking. *See* 1956 U.S. Code Cong. & Ad.News 3274, 3283. The existence of section 7607, authorizing warrantless searches in specific cases, does not imply an exclusion of the authority to make usual arrests under another statute. The plain language of section 1581(f) indicates to us that it imposes upon customs agents the duty to arrest whenever they have probable cause to believe that a person has violated a law under their jurisdiction. The Second Circuit has held that a customs agent possesses the authority under section 1581(f) to arrest a defendant for violating 18 U.S.C. § 549. *United States v. Collins,* 349 F.2d 863, 869 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1228, 16 L.Ed.2d 303 (1966).

■ We conclude that the stop was a temporary restraint because it was effected by four customs agents in two cars, each one with its blue light flashing. The question then is whether a reasonably prudent person would consider the intrusion justified in the investigation of possibly criminal behavior. *Terry v. Ohio,* 392 U.S. 1, 22, 27, 88 S.Ct. 1868, 1880, 1883, 20 L.Ed.2d 889 (1968). We do not consider the intrusion justified.

■ No investigatory purpose was served by stopping Bush on the highway except the convenience of the customs agents. No exigency necessitated the stop. Furthermore, the agents had no suspicion that Bush was then violating the law nor did they believe that they would detect a violation by stopping him. Accordingly, the stop was an unjustified seizure in violation of the Fourth Amendment. *See United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). The judgment of the district court awarding Bush nominal damages is affirmed.

■ Bush also argues that since the initial stop was illegal, all events following it were illegal. This argument is meritless. It confuses the exclusionary rule and the doctrine of proximate cause. We will not address Bush's claims regarding excessive violence, his Fourth Amendment rights, damages and basis for investigation because the relevant findings of the district court are not clearly erroneous. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855–56, 102 S.Ct. 2182, 2188–89, 72 L.Ed.2d 606 (1982). This leaves his claim under the Tucker Act.

### 4. TUCKER ACT

■ Bush argues that he should have been awarded damages under the Tucker Act because the United States illegally seized his vehicle. This point of error is based on Bush's contention that there was no evidence that his car had been used to "transport" or "conceal" smuggled artifacts. *See* 19 U.S.C. § 1595a(a) (1982).

Bush relies on the following testimony by agent Lindheim:

Q. Were [the artifacts] transported anywhere in that vehicle that you observed ever?

A. No, sir.

\* \* \* \* \* \*

Q. All right. And you acknowledged at your deposition that the vehicle didn't conceal any artifacts; did you not, sir?

A. I don't recall if I did or not, but the answer to the question is that no, the vehicle did not conceal any artifacts.

The district court found that "[o]nce the pottery was identified as pre-Columbian, and was found in or about the Cadillac, the agents had a sufficient basis for believing that the Cadillac had been used to transport and conceal the artifacts." Agent Lindheim also testified that Bush had removed the two pots from the car, one which was smashed by Bush and one which was identified by agent Dorsett as pre-Columbian. He did not testify to these facts from personal knowledge; however, this testimony displays a reasonable basis for the agents' belief as well as support for the trial court's finding. The finding is not clearly erroneous and we must not disturb it on

appeal. *See Inwood Laboratories*, 456 U.S. at 855–56, 102 S.Ct. at 2188–89 (1982).

AFFIRMED.