246 F.3d 194 (2nd Cir. 2001)
 THOMAS C. CERRONE, Plaintiff-Appellee,
v.
SCOTT L. BROWN and THOMAS M. FRESENIUS, individually and in their official capacity as members of the New York State Police, Defendants-Appellants,
MICHAEL F. CAHILL, FRANCIS A. DEFRANCESCO, SALVATORE S. VALVO, RICHARD G. MORSE, DEBORAH L. KOMAR, individually and in their official capacity as members of the New York State Police, JONATHAN Z. FRIEDMAN and GERALD W. CONNOLLY, Defendants.
 Docket No. 00-7177
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued Sept. 20, 2000
 Decided: April 10, 2001
 
 [Copyrighted Material Omitted]
 PAUL M. COLLINS, Hinman, Straub, Pigors & Manning, P.C., Albany, N.Y. (Deirdre Roney, Lawrence H. Schaefer, of counsel, on the brief) for Plaintiff-Appellee.
 ALAN S. KAUFMAN, Chamberlain & Kaufman, Albany, N.Y. (Jeffrey Chamberlain, on the brief) for Defendants-Appellants.
 Before: WALKER, Chief Judge, MINER and POOLER, Circuit Judges.
 JOHN M. WALKER, JR., Chief Judge:
 
 
 1
 This appeal requires us to determine whether in 1995 the law was clearly established that a police officer must have probable cause to seize another police officer in the course of a criminal investigation. Plaintiff-appellee Thomas C. Cerrone, a New York State Police Trooper, was detained and questioned by fellow officers during a criminal investigation of a suspected cover-up of a hit-and-run accident. Cerrone sued the investigating officers, including defendants-appellants Lieutenant Scott L. Brown and Captain Thomas Fresenius of the Inspection Section of the New York State Police, and others, for damages pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights to be free from an unreasonable seizure. On January 28, 2000, the United States District Court for the Northern District of New York (Thomas A. McAvoy, Chief District Judge) denied appellants' motion for summary judgment and found that issues of fact precluded finding them entitled to qualified immunity as a matter of law. This appeal followed.
 
 
 2
 In his complaint, Cerrone alleges that the defendants held him for questioning without probable cause. In support of their claim of qualified immunity, appellants argue that in 1995, the time of the seizure in this case, the law was not clearly established that probable cause was required to detain a police officer for questioning in the context of an investigation arising out of the performance of his official duties. In the alternative, appellants argue that if probable cause were required, the district court misapplied the standard for determining whether the defendants' conduct was nonetheless objectively reasonable -- whether they had "arguable probable cause" to justify the seizure in this case.
 
 
 3
 We hold that in 1995 the law was clearly established that a seizure of a police officer in the context of a criminal investigation required probable cause. However, because we agree with the appellants that the district court applied the wrong standard to determine whether their conduct was objectively reasonable, and failed to examine whether reasonable police officers could disagree as to the existence of probable cause given the information the arresting officers had, we vacate and remand to the district court for further proceedings.
 
 BACKGROUND
 
 4
 The district court has described the facts of this case in considerable detail. See Cerrone v. Cahill, 84 F. Supp. 2d 330 (N.D.N.Y. 2000). We summarize only those facts most relevant to this appeal.
 
 
 5
 In September 1994, the New York State Police received a letter describing a hit-and-run accident that had occurred in April or May of 1993. The letter identified the driver as one Rory Knapp and alleged that Rory Knapp's brother Timothy Knapp, a New York State Police Trooper, had assisted him in covering up the accident. The letter stated that Rory Knapp had hidden his car in Trooper Knapp's garage to avoid detection, and suggested in cryptic terms that several state troopers in the Peekskill barracks were aware of the cover-up ("the truth lies within the four walls of that barracks"). Though the letter appeared to have been authored by a man named Ed Scott, the author's identity was never verified. The letter did not mention Cerrone by name; nor did it suggest that he was involved in a cover-up.
 
 
 6
 The letter sparked an investigation into the incident. Appellants Fresenius and Brown were assigned to the investigation under the supervision of defendant Inspector Michael Cahill, who is not a party to this appeal. Their investigation revealed that on April 3, 1993, a car accident had taken place as described in the letter: Rory Knapp, driving a car owned by his companion, Dawn Brissett, crossed into the wrong lane of traffic and struck Maureen Hunt's vehicle. Hunt suffered minor injuries. Brissett later told police investigators that Rory Knapp had told her about his involvement in the accident. She stated that the day after the accident, Rory Knapp hid the car beside his brother Trooper Knapp's house, leaving it there until he took it to be destroyed.
 
 
 7
 The investigators ultimately concluded that the trooper who responded to the scene and prepared an accident report, Robert Gregory, had failed to conduct a thorough investigation. Appellant Brown learned from witnesses that the victim had provided Gregory with a description of the car, a partial license plate number, and items of the perpetrator's clothing found at the accident scene. However, it was apparent from a review of Gregory's report that Gregory did not follow up on these leads; instead he wrote in his report that "further investigation revealed no new clues, leads, suspects. Operator of Vehicle 1 could offer no new information." Cerrone signed Gregory's report as a supervisor.
 
 
 8
 Margaret Murphy, a bartender at an establishment near the accident scene, told an investigator that she was friends with both Rory Knapp and Sergeant Welsh, Cerrone's direct supervisor and the State Police Officer in charge of the zone in which the Peekskill State Police Station was located. She stated that Knapp and Welsh were friends with each other and that Rory Knapp had admitted to her that after the accident he had called Welsh, who told him "not to worry about it as [he] would take care of it."
 
 
 9
 Based upon the investigation, appellant Brown concluded that it was "reasonable to believe that Sergeant Cerrone was directly implicated in the cover-up as a result of at least the following facts, which reasonably appeared to be true to the investigation team": (1) Cerrone was Station Commander at the Peekskill Station, and thus would be expected to be aware of all of the activities at the station; (2) Cerrone was on duty when the accident occurred and went to the scene; (3) to the extent that Zone Sergeant Welsh, Cerrone's direct supervisor, had assisted in the cover-up, "he could not have done it without including Cerrone"; (4) Cerrone failed to find the car involved in the accident, despite having been given a detailed description of the car and the fact that it was placed in two locations that were frequently passed by officers of the Peekskill barracks; (5) Cerrone signed the accident report prepared by Trooper Gregory, which the appellants had determined was incomplete. See Cerrone, 84 F. Supp. 2d at 331.
 
 
 10
 On January 4, 1995, appellant Brown met with defendant Gerald Connolly of the Westchester County District Attorney's Office, who is not a party to this appeal, to discuss possible criminal charges arising out of the cover-up. According to Brown, Connolly indicated to him that they "would have a stronger case if [they] were able to get an oral admission from one of the targets."
 
 
 11
 On January 17, 1995, the investigative team discussed a possible criminal case based on the alleged cover-up. On that day, the district court found, "[d]efendants decided to stop Cerrone on his way home from work, question him in connection with the April 3 accident, and determine if he would cooperate with the investigation." Id. at 332. An agent of the New York State Bureau of Criminal Investigation, Lieutenant John Edward Grant, provided the investigators with a psychological profile of Cerrone in order to assist them in conducting the planned interview. See id.
 
 
 12
 On January 19, 1995, using an unmarked police car, the defendants stopped Cerrone. They asked whether he was carrying a weapon, allegedly "placed him in the felony position, placed him in the back of an unmarked police car (where he was guarded), transported him to a hotel room, read him his Miranda rights, [and] informed him that he was the target of a criminal investigation." Id. After approximately six hours of questioning, "Cerrone was told he could leave after he agreed to take a polygraph examination, which he took the next day." Id. Cerrone was never charged with a crime.
 
 
 13
 Cerrone sued the defendant police officers under 42 U.S.C. § 1983 for damages based on the deprivation of his Fourth and Fourteenth Amendment rights. Appellants Brown and Fresenius moved for summary judgment on the ground that they were entitled to qualified immunity. Appellants appeal the district court's denial of that motion.
 
 DISCUSSION
 
 14
 We review de novo a decision denying a government official's motion for summary judgment on the basis of qualified immunity. See Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000).
 
 
 15
 The district court held that the defendants were not entitled to qualified immunity on summary judgment because (1) the law was "clearly established" at the time of the seizure that probable cause was required to seize a police officer for the purpose of a criminal investigation; and (2) an issue of fact existed as to whether defendants' actions were "objectively reasonable" under the circumstances. See Cerrone, 84 F. Supp. 2d at 333-40.
 
 
 16
 Appellants concede for purposes of this appeal that their actions with respect to Cerrone on January 19, 1995 amounted to a "seizure" under the Fourth and Fourteenth Amendments. They argue, however, that the district court erred in two respects, asserting that: (1) the law was not clearly established in 1995 as to the level of individualized suspicion necessary to seize a police officer in order to investigate misconduct arising out of the performance of his official duties; and (2) even if the law were clearly established that probable cause was required, appellants' conduct was objectively reasonable because they had "arguable probable cause" to seize Cerrone. In this regard, they argue that the district court applied the wrong legal standard and thus erroneously found material facts in dispute to deny their qualified immunity claim. We consider each argument in turn.
 
 I.
 
 17
 A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), or (2) it was "'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).
 
 
 18
 Focusing on the first element in a qualified immunity analysis, the existence of a "clearly established right," the Supreme Court has explained: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (internal citation omitted). Thus, [i]n deciding whether a particular right was clearly established as of a particular time, we must determine (i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in the defendants' position would have understood from the existing law that their conduct was unlawful.
 
 
 19
 Townes v. City of New York, 176 F.3d 138, 144 (2d Cir.), cert. denied, 528 U.S. 964 (1999).
 
 
 20
 There can be little doubt that at the time of Cerrone's seizure, it was clearly established law that the Fourth Amendment prohibited police seizures of persons for custodial interrogation--even brief detentions falling short of arrest-- without probable cause. See Dunaway v. New York, 442 U.S. 200, 206-16 (1979) (holding that "detention for custodial interrogation... intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest" and to require probable cause); Davis v. Mississippi, 394 U.S. 721, 726-28 (1969) (holding that the Fourth Amendment applies during the investigative, as well as accusatory, stage); Katz v. United States, 389 U.S. 347, 358-59 (1967). The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers. See Elkins v. United States, 364 U.S. 206, 213 (1960).
 
 
 21
 Appellants, however, maintain that the law was not clearly established in 1995 that the Fourth and Fourteenth Amendments prohibited police seizures of other police officers without probable cause. They assert that regardless of whether such a seizure is for the purpose of a criminal investigation, probable cause is not required when the suspected police misconduct occurs during the performance of an officer's official duties. Like the district court, we disagree.
 
 
 22
 The fact that the person seized was a police officer does not alter a Fourth Amendment analysis, for "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." Garrity v. New Jersey, 385 U.S. 493, 500 (1967) (holding that police officers enjoy the same rights as other citizens).
 
 
 23
 In support of their argument, appellants point to several cases in which this court has upheld searches or seizures of police officers or other government employees in the absence of probable cause, see, e.g., Biehunik v. Felicetta, 441 F.2d 228 (2d Cir. 1971), and maintain that the distinction between those cases requiring probable cause and those requiring something less should be whether "the investigation arises out [of] the performance of the employee's duties," regardless of its purpose. They assert that "police employment gives rise to'special considerations' that must be taken into account in considering the reasonableness of work-related searches and seizures. Steps taken to assure 'employees' trustworthy performance of their assigned tasks [as policemen] are reasonable under the Fourth Amendment," quoting Biehunik, 441 F.2d at 231. Appellants also assert that this exception rests upon "'the substantial public interest in ensuring the appearance and actuality of police integrity,'" again quoting Biehunik, 441 F.2d at 230.
 
 
 24
 We are not persuaded by appellants' argument, as it would erode the principle that a criminal suspect who is a policeman enjoys the same rights as other suspects. See Garrity, 385 U.S. at 500. The crucial question is not whether the investigation involves actions arising out of a police officer's duties, but whether the investigation's objective is to discipline the officer within the department or to seek criminal prosecution.
 
 
 25
 We have permitted police seizures of police officers based upon less than probable cause in connection with internal administrative or disciplinary proceedings. In Biehunik, for example, we upheld as reasonable, despite the absence of any individualized suspicion, a lineup of 62 police officers for identification in the context of an internal investigation of police misconduct. The Biehunik court found that investigations with different purposes require different degrees of individualized suspicion:
 
 
 26
 In the familiar criminal arrest context, the reasonableness of a seizure of the person is indeed usually measured by the existence vel non of probable cause. But we cannot accept the contention that this principle, well established as it may be, must be applied inflexibly even in cases far removed from the criminal arrest arena.
 
 
 27
 Biehunik, 441 F.2d at 230. Distinguishing the facts there from the typical criminal investigation the court noted:
 
 
 28
 The lineup was ordered by that official of the police department charged with running an efficient and law-abiding organization--the Police Commissioner--and was clearly and highly relevant to the legitimate end of assuring his employees' trustworthy performance of their assigned tasks. Commissioner Felicetta's reference in his order directing the lineup to a possible criminal prosecution did not dilute the potential usefulness of the lineup in administering disciplinary measures. We therefore need not consider at this time the propriety of enjoining a similar lineup conducted exclusively with criminal prosecution in mind.
 
 
 29
 Id. at 231 (footnote omitted). Thus, Biehunik drew a distinction based upon whether the purpose of a seizure is exclusively to aid a criminal investigation, or simply to seek internal discipline:
 
 
 30
 We do not believe that the public must tolerate failure by responsible officials to seek out, identify, and appropriately discipline policemen responsible for brutal or unlawful behavior in the line of duty, merely because measures appropriate to those ends would be improper if they were directed solely toward the objective of criminal prosecution.
 
 
 31
 Id. at 230. Biehunik is also factually distinguishable from this case, as Biehunik did not involve custodial interrogation, which the Supreme Court expressly held, several years after Biehunik was decided, requires probable cause. See Dunaway v. New York, 442 U.S. 200, 216 (1979).
 
 
 32
 It therefore is clear, as it was in 1995, that Biehunik's exception to the probable cause requirement is limited to internal disciplinary investigations. Nothing in Biehunik disturbs the well-settled principle, established long before 1995, that probable cause is required for a seizure for custodial interrogation in the criminal context.
 
 
 33
 The Supreme Court's decision in O'Connor v. Ortega, 480 U.S. 709 (1987), further clarified that a lesser standard of individualized suspicion is permissible only in internal disciplinary investigations of government employees by their government employers. Indeed, as appellants correctly point out, the court in O'Connor specifically limited its holding to the facts before it:
 
 
 34
 Because the parties in this case have alleged that the search was either a noninvestigatory work-related intrusion or an investigatory search for evidence of suspected work-related employee misfeasance, we undertake to determine the appropriate Fourth Amendment standard of reasonableness only for these two types of employer intrusions and leave for another day inquiry into other circumstances.
 
 
 35
 O'Connor, 480 U.S. at 723 (emphasis in original). Like Biehunik, O'Connor did not disturb the well-settled rule that probable cause is required for criminal investigations.
 
 
 36
 Here, the district court found that Cerrone's seizure was for the purpose of a criminal, rather than a disciplinary or administrative, investigation. See Cerrone, 84 F. Supp. 2d at 334. The court based this conclusion on (1) the nature of the seizure, its setting, and its preparation; (2) the fact that the defendants did not follow the applicable collective bargaining agreement's specific procedures for administrative investigations; and (3) multiple admissions by appellants in the record that Cerrone was the target of a criminal investigation. See id. These admissions included appellant Brown's testimony:
 
 
 37
 Q: And at that date and at that interview [on January 19, 1995] was Sgt. Cerrone the target of an administrative investigation of the Division of State Police?
 
 
 38
 A: No.
 
 
 39
 Q: What was he?
 
 
 40
 A: At that time Sgt. Cerrone was considered a witness and possible suspect in a criminal investigation.
 
 
 41
 Brown also stated that prosecutors from the Public Integrity Bureau of the Westchester County District Attorney's Office "began working with the State Police investigation with respect to possible criminal prosecutions." Defendant Cahill testified that Cerrone's interview was "a criminal interview not an administrative interview."
 
 
 42
 Appellants' reliance upon United States v. Collins, 349 F.2d 863 (2d Cir. 1965), is unavailing. While Collins involved a criminal investigation, it is not controlling here. In Collins, we approved as reasonable a supervisor's search for stolen mail in a customs official's work jacket that was hanging in a public area. In that case, we placed special emphasis upon the broad authority of the supervising Customs Official to search public areas to find stolen mail or stolen property within a Customs facility. See id. at 868. Collins did not involve a seizure of a target of a criminal investigation for the purpose of custodial interrogation. Moreover, the Collins court expressly found that probable cause existed to search the defendant's person and apartment, and to arrest him. See id. at 868-69. Appellants' reliance upon the district court opinion in Sponito v. City of New York, No. 84 Civ. 3937 1986 WL 6158, at *5-6 (S.D.N.Y. May 28, 1986), aff'd, 805 F.2d 391 (2d Cir. 1986) (table decision) is similarly unavailing. A district court opinion affirmed by an unpublished table decision does not determine whether a right was clearly established. Cf. Townes, 176 F.3d at 144 (only Supreme Court and Second Circuit precedent are relevant to whether a right is clearly established).
 
 
 43
 We therefore agree with the district court's decision that Cerrone's seizure and custodial interrogation for the purpose of a criminal investigation required probable cause and that the law in that regard was clearly established at the time of the seizure.
 
 II.
 
 44
 The appellants next assert that even if probable cause were required, they are still entitled to qualified immunity because they had "arguable" probable cause to seize Cerrone, and thus their actions were objectively reasonable under the second element of qualified immunity analysis. Cerrone responds that we lack appellate jurisdiction to reach this issue, because the district court's denial of qualified immunity on summary judgment was based upon its finding that material facts were in dispute. We disagree with Cerrone. We have appellate jurisdiction to address appellant's second argument because we hold that the district court applied the wrong legal standard to this element of appellants' qualified immunity claim. See Martinez v. Simonetti, 202 F.3d 625, 632 (2d Cir. 2000) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291.") (internal quotation marks omitted).
 
 
 45
 Therefore, we turn to the merits of appellants' second claim. Even though the law was clearly established that probable cause was required to seize Cerrone, the second element of qualified immunity analysis permits a court to grant summary judgment if a reasonable officer could have believed his or her actions were lawful. A court must evaluate the objective reasonableness of the appellants' conduct "in light of clearly established law and the information the... officers possessed." Anderson, 483 U.S. at 641. Because the test is an objective one, the officer's "subjective beliefs about the [seizure] are irrelevant." Id. A defendant is therefore entitled to summary judgment on qualified immunity grounds if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that "'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon, 66 F.3d at 420 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).
 
 
 46
 The appellants correctly point out that to be entitled to qualified immunity, they need only have possessed "arguable" probable cause to seize Cerrone, not actual probable cause. Arguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks omitted). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable." Anderson, 483 U.S. at 641. Even on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences. See Ornelas v. United States, 517 U.S. 690, 699 (1996) (noting that "a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference"). A "police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Simonetti, 202 F.3d at 635 (internal quotation marks omitted). Nor is a police officer required to "sit as prosecutor, judge, or jury" in making a probable cause determination. Id. at 635-36 (internal quotation marks omitted).
 
 
 47
 In holding that there remained material issues in dispute with respect to whether appellants' conduct was objectively reasonable, the district court relied upon language specifically disavowed by the Supreme Court in Hunter v. Bryant, 502 U.S. 224 (1991). The district court stated that "'[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment or a directed verdict in a § 1983 action based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach.'" Cerrone, 84 F. Supp. 2d at 340 (quoting Hunter, 502 U.S. at 233 (Stevens, J., dissenting)). But see id. at 228 (per curiam) (expressly rejecting the dissent's characterization). The district court ultimately found that because material facts were in dispute, a "reasonable finder of fact could reach more than one conclusion." Cerrone, 84 F. Supp. 2d at 334.
 
 
 48
 As both this Circuit and the Supreme Court have repeatedly stated, the court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure. See Malley v. Briggs, 475 U.S. 335, 341 (1986); Lennon, 66 F.3d at 420-21. Because the district court failed to apply the correct legal standard to the objective reasonableness test and failed to consider whether appellants had arguable probable cause to seize Cerrone, we vacate and remand to the district court to consider whether appellants' conduct was objectively reasonable under the circumstances presented here.
 
 CONCLUSION
 
 49
 We hold that the law in 1995 was clearly established that seizure of a police officer in the context of a criminal investigation required probable cause on the part of the seizing officers. We also hold that the officers may be entitled to qualified immunity if they had arguable probable cause for the seizure, thus rendering their conduct objectively reasonable.
 
 
 50
 Accordingly, the decision of the district court is vacated and remanded for further proceedings consistent with this opinion.
 
 
 51
 No costs to either party.