13-2576
*United States v. Tingman*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 14th day of March, two thousand sixteen.

Present:    ROBERT A. KATZMANN,
                           *Chief Judge*,
                   ROBERT D. SACK,
                   RAYMOND J. LOHIER, JR.,
                           *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

                           *Appellee*,

                   v.                                              Nos. 13-2576(L), 14-2371(Con)

FRANK WILLIAMS, DELSHONDA KIMBLE, JESSE LEWIS, a/k/a Wes, JOAN JAMES, a/k/a Nay Nay, JASON ELDER, a/k/a TI, a/k/a Turn It Up, FLOYD SPRUILL, a/k/a/ Twin, MESSIAH LOCKHART, a/k/a Siah, KENNETH MITCHELL, JR., a/k/a Sham, BASHEEM SMALLS, a/k/a Bah, a/k/a Jeffrey Bradford, DESHAWN LEWIS, JAASAN BASTIAN, a/k/a Gex, ANDREA BROWN, a/k/a Pumpkin,

                           *Defendants*,

MARION TINGMAN,

                           *Defendant-Appellant*.

_____

1

For Appellee:                  SARAH E. PAUL, Assistant U.S. Attorney (Justin Anderson, Assistant U.S. Attorney, *on the brief*), *for* Preet Bharara, U.S. Attorney for the Southern District of New York, New York, NY.

For Defendant-Appellant:    NICHOLAS J. PINTO, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Stein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Marion Tingman appeals from a judgment of conviction entered on May 20, 2014, by the United States District Court for the Southern District of New York (Stein, *J.*), following a jury trial, of one count of conspiracy to distribute powder and crack cocaine in violation of 21 U.S.C. § 846 and one count of possession of a firearm in furtherance of a narcotics conspiracy in violation of 18 U.S.C. § 924(c). On appeal, Tingman argues that: (1) the evidence was insufficient that he possessed a shotgun "in furtherance of" the narcotics conspiracy; (2) the government improperly introduced its witnesses' cooperation agreements into evidence and elicited testimony about the truth-telling requirements of those agreements on direct examination; and (3) the government made improper arguments in summation and rebuttal. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

The government alleged that, from 2006 to 2011, Tingman participated in a conspiracy to distribute powder and crack cocaine in and around Monticello, NY, and possessed a firearm in furtherance of that conspiracy. At trial, it presented the testimony of three cooperating witnesses, Joan James, Frank Williams, and Jason Elder, all of whom had been members of the conspiracy.

The cooperating witnesses testified that Tingman would procure powder cocaine from New York City, cook it into crack, and distribute it in and around Monticello, NY, through a network of dealers. Tingman ran this operation out of a house that the conspirators referred to as the "white house." The cooperating witnesses also testified that the conspirators kept a shotgun under a couch at the white house for the purpose of protecting themselves, their drugs, and the drug proceeds. On the basis of this evidence, the jury found Tingman guilty on both counts.

Tingman's first claim is that the government failed to present sufficient evidence that he possessed the shotgun "in furtherance of" the narcotics conspiracy. *See* 18 U.S.C. § 924(c). The "in furtherance of" requirement "may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). While this is a fact-intensive inquiry, ultimately the question is whether the firearm "afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005).

Although we review a claim of insufficient evidence *de novo*, a defendant asserting such a claim "bears a heavy burden." *Finley*, 245 F.3d at 202. "We must credit every inference that the jury may have drawn in favor of the government . . . . The jury's verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 202–03 (quoting *United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998)).

The evidence in this case amply supported the jury's verdict. Both Williams and Elder testified that the purpose of keeping the shotgun at the white house was to protect the conspirators and their drug business. Although Williams and Elder testified only about their own understanding of the shotgun's purpose, given the cooperative relationship between the conspirators, the jury could reasonably infer that Tingman shared that understanding. This

testimony satisfies the "in furtherance of" requirement. *See Lewter*, 402 F.3d at 322 ("Possession of a firearm to defend a drug stash clearly furthers the crime of possession with intent to distribute the contents of that stash.").

Tingman's second claim, which he makes for the first time on appeal, is that the prosecutor improperly bolstered the cooperating witnesses' credibility by introducing their cooperation agreements into evidence and eliciting testimony about the consequences of failing to tell the truth before the defense had attacked their credibility. The government may introduce the "truth-telling" provisions of a cooperation agreement to "rehabilitate witnesses whose credibility has been questioned." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 85 (2d Cir. 2014). However, it may not do so "unless and until the witness's credibility has been questioned in ways that 'open the door' to the admission of the agreement." *Id.* at 86.

Where, as here, the defense fails to object at trial, we review for plain error. *See id.* at 96. Under the plain error standard, the defendant has the burden to demonstrate that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

The government concedes that it introduced the cooperation agreements and testimony about their truth-telling provisions prematurely. Nonetheless, we have held that where it was "inevitab[le]" that defense counsel would attack the witness's credibility and defense counsel did in fact do so, an "error in the timing of the introduction of the cooperation agreement" does not require reversal. *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1147 (2d Cir. 1978). Here, the

4

government presented testimony from three cooperating witnesses that, if believed, would clearly establish Tingman's guilt. Tingman does not on appeal dispute that it was inevitable that the defense would seek to discredit the cooperating witnesses in this case by pointing out their incentive to curry favor with the government. And in fact, Tingman did not present any witnesses at trial, instead making his case solely through vigorous cross-examination of the government's witnesses, including attacks on their credibility. Thus, the error was not in introducing the challenged evidence, but in the timing of its introduction. Under these circumstances, the error did not affect Tingman's substantial rights.

Finally, Tingman claims that the prosecutor committed various forms of misconduct during summation and rebuttal. Although prosecutors are afforded significant leeway in addressing a jury, we have placed limits on what constitutes a proper argument. It is "well established that the prosecution may not vouch for its witnesses' credibility." *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004). Prosecutorial vouching may "suggest[] to a jury that there is additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility" or may "induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 18–19 (1985)). We have also found that a prosecutor committed reversible error by "malign[ing] defense counsel by accusing him of willingness to make unfounded arguments that were not made." *United States v. Friedman*, 909 F.2d 705, 709 (2d Cir. 1990). Similarly, we have cautioned that "[a] prosecutor's misrepresentation of testimony may require reversal because of the inevitable prejudice to the defendant." *United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973).

"[R]eversing a criminal conviction for prosecutorial misconduct is a drastic remedy that courts generally are reluctant to implement." *United States v. Valentine*, 820 F.2d 565, 570 (2d

5

Cir. 1987). We will reverse based on prosecutorial misconduct only if it "causes the defendant 'substantial prejudice' by 'so infecting the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (citation and alterations omitted). "In assessing whether a defendant has sustained substantial prejudice, we consider the severity of the alleged misconduct, any curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct." *Newton*, 369 F.3d at 680. Where a defendant failed to object to the challenged statement below, we review only for plain error. *See United States v. Williams*, 690 F.3d 70, 77 (2d Cir. 2012).

Tingman argues that the prosecution improperly vouched for its cooperating witnesses. In particular, he challenges (1) the prosecutor's statement that Williams' "testimony [was] credible," Tr. 667; (2) the prosecutor's argument that Williams had no reason to "tell . . . the truth about the drug conspiracy but then make up a story about the shotgun," Tr. 667; and (3) the prosecutor's argument that Elder's prior inconsistent statements were consistent with his "trying very hard to get it right" rather than lying, Tr. 671. The defense objected to the first two statements but not to the third. Tingman now argues that these statements impermissibly linked the prosecutor's own credibility to that of the witness.

We disagree. In the context of the entire summation, it was clear that these statements were the prosecutor's submissions based on the evidence, not the prosecutor's personal beliefs. If that was ever in doubt, such doubt was resolved by the court's curative measures. With respect to the first two challenged statements, the court asked the prosecutor, "Well, that's your submission, correct?" and the prosecutor responded, "That's correct." Tr. 668. A prosecutor does not engage in impermissible vouching by offering reasons to credit a witness's testimony or posing rhetorical questions about the witness's motive to lie. *See United States v. Perez*, 144

6

F.3d 204, 210 (2d Cir. 1998). In any event, in light of the overwhelming evidence of Tingman's guilt, it is highly unlikely that these stray remarks influenced the jury's verdict.

Tingman also argues that the prosecutor improperly maligned the defense counsel. Specifically, Tingman challenges the prosecutor's assertion that defense counsel's summation was "designed to distract you from the facts. . . . The reason he is trying to distract you is that if you focus on the evidence, if you focus on the facts, it is all over. His client is done, and he knows that. . . . He knows that. . . . Don't be distracted." Tr. 712–13. We agree that the prosecutor should not have placed defense counsel's credibility at issue. *See Friedman*, 909 F.2d at 709. Although we have held that it is not improper for a prosecutor to characterize defense arguments as attempts to "grasp at straws" or "focus on distractions," *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012), here, the prosecutor improperly made assertions about defense counsel's subjective beliefs. Nonetheless, a few imprudent remarks do not amount to "the sort of sustained attack on the integrity of defense counsel that we [have] held to be reversible error." *Id.* Furthermore, the court gave a corrective instruction that "the attorneys for both sides here are advocates for their respective sides. It is not an issue of their own beliefs or their subjective beliefs. It is a question of what the evidence shows, not what the attorneys think." Tr. 713. This curative measure, along with the strength of the evidence against Tingman, rendered any risk of prejudice minimal.

Finally, Tingman challenges the prosecutor's statement that Tingman "wanted to upgrade to a better gun." Tr. 734. Tingman argues that this assertion mischaracterizes the evidence, as the testimony was that he wanted to "get rid of [the gun]," not to buy a new one. Tr. 415. Whether or not the prosecutor's statement was potentially misleading, defense counsel failed to object at trial and the prosecutor's statement was a fleeting comment about an issue that was not central to the

7

case. In light of the overwhelming evidence of Tingman's guilt, there is no meaningful probability that this comment affected the outcome of the proceedings. It therefore does not rise to the level of plain error.

We have considered Tingman's remaining arguments and find no reason to disturb the jury's verdict. For the reasons given, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK